# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01731-REB-NYW

DR. LENA CHANG, an individual,

     Plaintiff,

v.

VAIL RESORTS, INC., a Delaware corporation,
ROCKRESORTS INTERNATIONAL, LLC, a Delaware corporation,
GREAT HOUSE LIMITED, a Cayman Islands company, and
HALF MOON BAY LIMITED, a Jamaica company,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Nina Y. Wang

This matter is before the court on the following pending motions:

(1)    The Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Vail Resorts, Inc. ("Vail") and RockResorts International, LLC ("RockResorts") (collectively, "Vail Defendants") [#16, filed Sept. 3, 2015];

(2)    Defendant Half Moon Bay Limited's Motion to Dismiss [#19, filed Sept. 3, 2015];

(3)    Defendant Great House Limited's Motion to Dismiss [#25, filed Sept. 25, 2015];

(4)    Defendants Half Moon Bay Limited and Great House Limited's Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* ("Motion to Dismiss for *Forum Non Conveniens*") [#29, filed Sept. 14, 2015]; and

(5)    Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) filed by the Vail Defendants ("Vail Defendants' Motion to Dismiss") [#51, filed Nov. 23, 2015].

These motions have been referred to the undersigned Magistrate Judge for Recommendation pursuant to 28 U.S.C. § 636(b)(2); the Order of Reference dated September 4, 2015 [#22]; and the Memoranda dated September 9, 2015 [#23], September 14, 2015 [#28, #30], and November 23, 2015 [#52].  The court has reviewed the Parties' briefing related to each of the pending Motions and the applicable case law, and is sufficiently advised of the premises.  For the following reasons, this court respectfully RECOMMENDS that the Vail Defendants' Motion to Dismiss the Amended Complaint [#51] be GRANTED, Defendant Half Moon Bay Limited and Great House Limited's Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* [#29] be GRANTED; and the remaining Motions be DENIED as MOOT.

## BACKGROUND

The following factual allegations are drawn from Plaintiff's Amended Complaint and are accepted as true for the purposes of considering the instant Motions.  Beginning in 1984, Dr. Chang entered into six contracts with Great House Limited ("Great House") and Half Moon Bay Limited ("Half Moon"), including Contract Numbers 211940401, 211912201, 210264701, 211945101, 211945201, and 214015201 (the "Contracts").  [#48 at 3].  The contracts pertain to vacation accommodations located at the Half Moon Club, Montego Bay, Jamaica, W.I.  [#48-1].  The governing law for the contracts is the law of the Cayman Islands, B.W.I.  [#48-2 at ¶ 16].  None of the contracts or terms and conditions therein are between Plaintiff and Vail or RockResorts.  [#48, #48-1, #48-2].

On or about March 14, 2015, Dr. Chang received a letter from Half Moon terminating her Club Membership Agreements relating to the Jamaican resort.[1]   The letter includes contact information for Graham Frank at Vail Resorts for "any questions about this letter."  [#48-3 at 2]. By letter dated July 15, 2015, Half Moon contacted Dr. Chang again regarding options arising from the termination and offering a "Settlement Proposal."   [#48-5 at 1].   The Settlement Proposal is presented on letterhead from Half Moon located in Montego Bay, Jamaica by Richard Ian Whitworth.  [*Id.*].  Mr. Frank is not mentioned in the correspondence or Settlement Proposal documents.  [#48-5].

After negotiations failed to resolve the dispute over the cancelation of her club membership, Plaintiff initiated this action on August 8, 2015, identifying the basis of this court's subject matter jurisdiction as diversity pursuant to 28 U.S.C. § 1332.  [#1 at ¶ 6, #32 at 3]. Originally, Plaintiff asserted three claims against Vail Resorts, RockResorts, Half Moon, and Great House (collectively, "Defendants"):   declaratory judgment;  breach of contract;  and injunction.  [#1].  The Vail Defendants filed a Motion to Dismiss for failure to state a claim on September 3, 2015, arguing that they could not be liable for any of the causes of action asserted against them because they were not party to the contracts.  [#16].  Half Moon filed a Motion to Dismiss for improper service and lack of personal jurisdiction on that same day.  [#19].  Great House filed a Motion to Dismiss for lack of personal jurisdiction on September 10, 2015.  [#25]. Half Moon and Great House also filed a Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* ("Motion to Dismiss for *Forum Non Conveniens*") on September 14, 2015.

---

[1] While Plaintiff alleges that the letter is from RockResort [#48 at ¶ 17], the letter is on letterhead for Half Moon, and bears an address and telephone number associated with Half Moon in Montego Bay, Jamaica.  [#48-3].

Plaintiff filed an Amended Complaint on November 5, 2015,[2] in which she continues to seek a declaratory judgment; relief arising from an alleged breach of contract; and an injunction against Half Moon Bay Limited and Great House Limited (but not Vail Resorts or RockResorts) and adds a claim for intentional interference of contractual relations against Vail Resorts and RockResorts.  [#48].  The Amended Complaint prompted the Vail Defendants to file their pending Motion to Dismiss.

## ANALYSIS

### I.     Standard of Review

Ordinarily, the filing of an Amended Complaint would moot pending motions directed at the original Complaint.  *See e.g.*, *Quezada v. Mink*, No. 10-cv-00879-REB-KLM, 2010 WL 5343143, at *1 (D. Colo. Dec. 21, 2010).  Indeed, the first Motion to Dismiss filed by the Vail Defendants [#16] is moot because the causes of action to which it is directed no longer survive against these defendants in the Amended Complaint.  [#48].  However, in these circumstances, the Motion to Dismiss for *Forum Non Conveniens* applies equally to the Amended Complaint, as the claims against Defendants Half Moon and Great House remain and are substantively unchanged.  Therefore, pursuant to Rule 1 of the Federal Rules of Civil Procedure, this court will proceed first with the consideration of the Vail Defendants' Motion to Dismiss and then consider the Motion to Dismiss for *Forum Non Conveniens* brought by Half Moon and Great House.

---

[2] While Plaintiff's Amended Complaint does not appear to be timely filed as a matter of right under Rule 15(a)(2)(B) because it was filed more than 21 days after the filing of the original Complaint and after Defendants moved for dismissal, none of the Defendants moved to strike the Amended Complaint and Vail Resorts and RockResorts have chosen to move to dismiss the additional claim for tortious interference on Rule 12(b)(6) grounds.  [#51].

A.      **Rule 12(b)(6) Motion**

The standard applied by this court in considering the Vail Defendants' Motion to Dismiss the claim for intentional interference with contractual and business relationship is well-known. A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding such a motion, the court must "'accept as true all well pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff.'" *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  The plaintiff must frame a complaint with enough factual matter, when taken as true, to suggest that he or she is entitled to relief.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  While the court's analysis is typically focused on the allegations as set forth within the four corners of the complaint, the court may consider the documents referred to in the complaint that are central to the claims without converting the motion to dismiss into one for summary judgment.  *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).  While it is not the court's function at this phase to weigh potential evidence that the parties may raise at trial, *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999), Plaintiff must offer sufficient factual allegations to raise the right to relief beyond a speculative level to a plausible one.  *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Plausibility refers to the scope of the allegations in a complaint—*i.e.*, if they are so general that they encompass a wide swath of conduct, much of it innocent, then the

5

plaintiffs have not nudged their claims across the line from conceivable to plausible.  *Robbins*, 519 F.3d at 1247.

### B.   Motion to Dismiss for *Forum Non Conveniens*

"The Supreme Court has characterized the *forum non conveniens* doctrine as a 'supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'"  *si v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)).  A court need not first establish its own jurisdiction before dismissing a suit on the grounds of *forum non conveniens* when considerations of convenience, fairness, and judicial economy so warrant.  *Sinochem*, 549 U.S. at 432.  Dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can arise from the adjudication of a dispute in a certain locality.  *Id.* at 429.

As recognized by the Parties, the court is confronted with two threshold questions in considering whether to dismiss a case on the basis of *forum non conveniens*.  First, the court must determine whether there is an adequate alternative forum in which defendant is amenable to process.  *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998).  Second, the court considers whether foreign law applies.  *Id.*  Only if the answer to both of these threshold questions is "yes," does the court proceed to the next step in the analysis, *i.e.*, the weighing of the private and public interests presented by the case.  *Id.*

The private interests to be considered by the court are: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the

premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive." *See Yavuz*, 576 F.3d at 1180.

The public interest factors include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Gschwind*, 161 F.3d at 606.

The court must balance these private and public interests against Plaintiff's choice of forum. It is Defendants' burden to establish that dismissal pursuant to the *forum non conveniens* doctrine is appropriate. *See Sinochem*, 549 U.S. at 430. Plaintiff's choice of forum is generally favored.[3] *Id.* Still, it is far from absolute.

## II.    Vail Defendants' Motion to Dismiss

The court first considers the Vail Defendants' Motion to Dismiss. Plaintiff contends that Colorado law applies to its claim of tortious interference, and "Defendants have not and cannot meet their burden to show that Cayman Islands law applies to all the claims against all of the

---

[3] Half Moon and Great House argue that Dr. Chang's choice of forum should not be given deference because she is not a resident of Colorado. [#55 at 2-3]. For that proposition, Half Moon and Great House cite *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). This court concludes that the *Employers* case is inapposite, because it arises under the application of 28 U.S.C. § 1404(a), *i.e.* a transfer between one federal district court in the United States to another, rather than under *forum non conveniens*, which contemplates dismissal of an action in the United States in favor of a foreign jurisdiction. While it does not appear that the Tenth Circuit has passed on this precise issue, other circuits have construed "home forum" in the context of a *forum non conveniens* analysis as considering whether the plaintiff is a United States citizen or resident, not whether the plaintiff resides in the particular federal district where she has brought suit. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015). *See also Standard Bank PLC v. Vero Ins. Ltd*, No. 08-cv-02127-PAB-KLM, 2009 WL 458680, at *2 (D. Colo. Feb. 24, 2009).

Defendants." [#50 at 4]. Because the court's jurisdiction is based on diversity, and the Parties raise no conflicts-of-law issues, the substantive law of Colorado applies. *Graziani v. Epic Data Corp.*, 305 F. Supp. 2d 1192, 1196 (D. Colo. 2004).

Under Colorado law, one who "intentionally and improperly interferes in the performance of a contract between another and third person is liable in tort to the other for the pecuniary loss resulting from the nonperformance of the contract. *See W.O. Brisben Cos. Inc. v. Krystkowiak*, 66 P.3d 133, 136 (Colo. App. 2002), *aff'd* 90 P.3d 859 (Colo. 2004). To survive dismissal of such a claim, a plaintiff must plead sufficient facts, if true, to establish the following elements: (1) the existence of a valid contract between the plaintiff and the third party; (2) knowledge by the defendant of the contract; (3) an intentional action by the defendant that induced the breach of the contract and; (4) resulting damages. *See e.g.*, *Graziani*, 305 F. Supp. 2d at 1196 (delineating the elements of the claim in the context of summary judgment). In addition, in this case, Plaintiff contends that one or both of the Vail Defendants is "an agent for Half Moon" or are "managers and agents of Half Moon." [#32 at 11, #57 at 7, 8]. In general, an agent who is acting within the scope of official duties who causes his or her principal to breach a contract generally will not be held liable for tortious interference with that contract. *See Estate of Hill v. Allstate Ins. Co.*, 354 F. Supp. 2d 1192, 1199 (D. Colo. 2004) (citing *W.O. Brisben*, 66 P.3d at 136). An agent may only be liable for interference if he acts "improperly," that is, "motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties." *Id.*

At this stage, this court accepts all well-pled facts in Dr. Chang's operative Amended Complaint as true. However, a court is not required to accept conclusory allegations or "legal conclusions masquerading as factual conclusions." *See Ware v. Denver Health*, No. 09-cv-

01103-REB-BNB, 2009 WL 4506409, at *1 (D. Colo. Nov. 24, 2009).   In her Amended

Complaint, Dr. Chang alleges that "Defendants Vail Resorts and RockResorts International by

words or conduct interfered with Half Moon's performance of the Contract, thereby causing Half

Moon to terminate the Contracts with Dr. Chang."   [#48 at ¶ 44].   In addition, she avers that

"[t]he interference by Vail Resorts and RockResorts International was improper."   [*Id.* at ¶ 45].

But the Amended Complaint is entirely devoid of any *factual* allegations to support these legal

conclusions.   Dr. Chang does not identify any action by the Vail Defendants that directed Half

Moon to terminate its contracts with Dr. Chang.   Instead, the correspondence from Half Moon

attached by Dr. Chang to her Amended Complaint [#48-3] makes clear that Half Moon, not the

Vail Defendants, has "no choice but to elect to terminate your Club Membership Agreement(s)

in accordance with the terms and conditions of the agreement (s), effective as of the date of this

letter."   [*Id.* at 2].   The letter identifies Graham Frank as a representative of Half Moon's agent.

[*Id.*].   Nothing in the letter suggests that the decision to terminate was precipitated by one or both

of the Vail Defendants, and the Amended Complaint contains no factual allegations to suggest

that the Vail Defendants took an intentional act to induce the breach of Half Moon and/or Great

House's contracts with Dr. Chang."   [#48].   As noted by the Vail Defendants, the Amended

Complaint does not allege that the Vail Defendants authored or sent the letter, recommended or

decided to send the letter, participated in the sending of the letter, or took any action whatsoever

with regard to the letter. Indeed, Dr. Chang's Response to the Vail Defendants' Motion to

Dismiss underscores the speculative nature of Dr. Chang's claim against the Vail Defendants

when it points to no factual allegations to support the claim, but rather argues "[a]s the managers

and agents of Half Moon, it is entirely plausible that they both were involved with the decision to

terminate Dr. Chang's Contracts."   [#57 at 8].   And the case law is clear that judges are trusted to

prevent discovery from becoming "fishing expeditions or an undirected rummaging for evidence of some unknown wrongdoing." *See Cuomo v. The Clearing House Ass'n*, *L.L.C.*, 557 U.S. 519, 531 (2009).

Nor does the Amended Complaint allege any facts that would support a conclusion that either or both of the Vail Defendants acted "improperly," and were "motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties." *See Estate of Hill*, 354 F. Supp. 3d at 1199. Instead, as discussed above, Dr. Chang alleges that some unspecified "words or conduct interfered with Half Moon's performance of the Contract, thereby causing Half Moon to terminate the Contracts with Dr. Chang." [#48 at ¶ 44]. This contention is insufficient to suggest that either or both of the Vail Defendants desired to harm Dr. Chang or Half Moon, or specifically intended to interfere with their contract. To the contrary, Dr. Chang's entire Motion for Jurisdictional Discovery is based on a theory that all of the Defendants are working in concert with each other. [#32].

Accordingly, this court respectfully RECOMMENDS that the Vail Defendants' Motion to Dismiss for failure to state a cognizable claim be GRANTED.[4]

### III.    Half Moon and Great House's Motion to Dismiss for *Forum Non Conveniens*

The court now turns to considering the merits of Half Moon and Great House's Motion to Dismiss for *Forum Non Conveniens*. As discussed above, the court must first consider the threshold issues of (1) whether there is an adequate alternative forum in which the remaining

---

[4] In making this Recommendation, the court does not base its decision on the Vail Defendants' arguments related to Plaintiff's litigation strategy or the propriety of such strategy. [#51 at 4-5]. The court merely notes that all pleadings filed by any party must comply with Rule 11 of the Federal Rules of Civil Procedure, which requires all claims, defenses, and other legal contentions be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law and factual contentions to have evidentiary support. Fed. R. Civ. P. 11(b).

Defendants, Half Moon and Great House are amenable to process; and (2) whether foreign law applies.

### A.      Threshold Inquiries

#### 1.      Adequate Alternative Forum

As Dr. Chang acknowledges, Half Moon and Great House have agreed to submit themselves to process and jurisdiction in a Jamaican court.  [#50 at 3; #29 at 6].  Her only remaining argument with respect to the first prong appears to be that the Vail Defendants have not made such an offer.  [#50 at 3].  Dr. Chang does not forward any argument that substantively, Jamaica courts are insufficient for any reason.  In addition, the Tenth Circuit has held that "the alternative forum is not inadequate unless its remedy is 'so clearly inadequate that it is no remedy at all.'"  *Fallhowe v. Hilton Worldwide, Inc.*, No. 14-cv-02870-PAB-KLM, 2015 WL 5081690, at *2 (D. Colo. Aug. 28, 2015) (citing *Yavuz*, 576 F.3d at 1174), *appeal dismissed* (Dec. 29, 2015).

Because this court finds that Dr. Chang's claim for intentional interference with contractual relations is not viable as pled in the Amended Complaint, this court concludes that whether the Vail Defendants are amenable to service of process in Jamaica is no longer relevant, and the record before the court demonstrates that the courts in Jamaica are an adequate alternative forum for this action.

#### 2.      Application of Foreign Law

The court finds that the claims of this case require the application of foreign law.  There is no dispute between the Parties that the law of the Cayman Islands governs the contract interpretation.  [#50 at 3-4 ("Dr. Chang concedes that the choice of law provision in the Contracts says that Cayman Islands law governs disputes between Dr. Chang and Great House

and Half Moon involving the Contracts.")]. In addition, Dr. Chang's claims for declaratory judgment and injunction all arise from the alleged breach of contact.

As with the first prong, Dr. Chang disputes that foreign law applies due to her claim of tortious interference of contractual relations. [*Id.* at 4]. Because it has recommended that the claim against the Vail Defendants be dismissed, this court finds that the second threshold issue is also met, *i.e.*, the adjudication of the three remaining claims against Half Moon and Great House require the application of foreign law. In addition, even if it survived, the fact that Plaintiff's intentional interference of contractual relations claim might proceed under United States law does not preclude this court from finding the second threshold inquiry satisfied. The core claims in this case will be governed by Cayman Islands law, not American law. Consequently, the answer to whether the claims of this case require the application of federal law is "yes." *Alpine Atl. Asset Mgmt. AG v. Comstock*, 552 F. Supp. 2d 1268, 1279 (D. Kan. 2008).

### B.    Private Interests

The court now turns to considering the private interests presented by this case: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive. The court finds that taken as a whole, these factors weigh slightly in favor of Jamaica.

At its core, this case presents a claim for breach of contract involving a vacation property located in "the Great House Villas at Half Moon Club, Montego Bay, Jamaica, W.I." [#48-1 at 10]. Half Moon and Great House contend that all the witnesses and documents, except for Dr. Chang herself, are located in Jamaica. [#29 at 10]. Half Moon and Great House identify three

specific individuals, Richard Ian Whitfield, Peter Kellond, and George Palmer, all of Half Moon, as administering and deciding to terminate the Club Membership program, and all reside in Jamaica. [*Id.* (citing #29-3, at ¶ 7)]. Half Moon identifies as the basis of its termination on the implementation of timeshare legislation by Jamaica. [#48-3]. Dr. Chang identifies Guy Steuart III, the Chairman of Half Moon, who resides in Maryland, and Graham Frank, the point of contact identified in the March 14 termination letter, as potential witnesses located outside of Jamaica. [#50 at 4-5]. Dr. Chang also argues that some relevant documents may be located in either Maryland or Colorado, because the question of the identity of the individuals who made the termination decision is "an open one." [*Id.* at 6].

The court must examine the materiality and importance of the anticipated witnesses' testimony when determining accessibility and convenience. *See Gates Learjet Corp. v. Jensen*, 743 F.3d 1325, 1335-36 (9th Cir. 1984). This court agrees with Dr. Chang that it is currently unclear where all the relevant witnesses and documents are located. But of the currently identified witnesses, only the witnesses identified by Half Moon and Great House have defined relevance: Mr. Whitfield is a Director of Great House and a Managing Director of Half Moon who has been involved with the club membership program since the inception; Mr. Kellond has knowledge with regard to the financial and accounting aspects upon which Half Moon and Great House rely to justify the termination of the contracts at issue; and Mr. Palmer is also familiar with the administration of the club memberships at issue. [#48-3 at ¶ 12]. It is unrefuted that litigants in Jamaican courts may subpoena witnesses, including non-party witnesses. [#29-1 at ¶ 4]. While Dr. Chang postulates that both Messrs. Steuart and Frank have knowledge relevant and discoverable in this matter, that conclusion has not yet been established. [*Id.* at 4-5]. As a result, this court concludes that it is still unclear at this juncture how important non-party

witnesses like Mr. Steuart or Mr. Frank are to this action, and therefore, the court finds that their potential participation is outweighed by the availability of the compulsory process of Jamaican courts over Messrs. Whitfield, Kellond, and Palmer.

Half Moon and Great House also insist that all the relevant documents are located in Jamaica, identifying "the original membership contracts, reservation details, and membership records." [#29 at 10; #29-3 at ¶ 8]. Dr. Chang again argues that relevant documents may be located in either Maryland or Colorado, though for the same reasons as state above, her basis for this argument is, at best, limited at this time. [#50 at 6]. This court is unpersuaded that the location of potentially relevant documents weighs heavily in favor of one side or another, but based on the evidence before the court, concludes that it slightly favors Jamaica. It is undisputed that the contractual documents at issue are physically located in Jamaica. [#29-3 at ¶ 8].[5] It is also undisputed that litigants before a Jamaican court can compel production of those documents, [#29-1 at ¶ 4], without concerns that would be attendant to this court regarding whether production of documents from Jamaica would implicate compliance with the Hague Convention or other international treaty. *See Fallhowe*, 2015 WL 5081690, at *9 (finding that "the many difficulties in obtaining testimony and evidence in located foreign jurisdictions … weigh in favor of dismissal on *forum non conveniens* grounds).

Finally, the court briefly touches upon the Parties' expectations under the contract. The terms and conditions clearly indicate that "[t]his agreement shall be governed and construed in accordance with law of Cayman Islands, B.W.I." [#48-2 at ¶ 16]. The rules and regulations

---

[5] It is unclear to this court how reservation details and membership records are particularly relevant to this breach of contract action, if, as Half Moon and Great House contend, the termination was precipitated by the new Jamaican time share legislation. Similarly, the court is unpersuaded that a viewing of the property is necessary for an action that is premised on a termination of contracts due to legislation, rather than any condition of the property.

governing the occupancy were set by Great House, a Cayman Islands' entity.  [*Id.* at ¶ 7; #48 at ¶ 4].   The subject vacation property is located in Montego Bay, Jamaica.  [#48-1 at 2].   It is reasonable to conclude that the Parties to the contracts reasonably anticipated litigation to occur outside of the United States, should a breach occur by either side.

Therefore, based on the record before it, the court concludes that the private factors weigh in favor of Jamaica, due to the articulated relevance of information known to Messrs. Whitfield, Kellond, and Palmer and the contractual documents, who are all located in Jamaica and are subject to the compulsory process of the Jamaican courts.

## C.    Public Interests

The court now turns to the issues of public interest that this case presents, *i.e.*, (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.   Consideration of these factors leads this court to conclude that dismissal for *forum non conveniens* is appropriate.

The first factor to be considered is the administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin.   While both Parties frame this inquiry as a question of which court can most efficiently dispose of these claims, this court looks both at the practical question of how long it may take this case to be fully adjudicated in the respective forums, and the underlying policy consideration of allowing cases to be filed outside of their place of origin.   Plaintiff concedes that if the case proceeds only as to Half Moon and Great House, resolution of the dispute may be faster in Jamaica than here in Colorado.   [#50 at 9].   Certainly, to the extent that this action is not dismissed on *forum non conveniens* grounds,

15

this court will also have to expend additional resources to decide whether it may exercise personal jurisdiction over Half Moon and Great House, before it may proceed to consider the merits.  In contrast, both Half Moon and Great House have indicated that they are subject to the jurisdiction of the Jamaican courts.  [#29 at 6].  The testimony of Gordon Robinson [#29-1] indicates that trials are considered expedited in the Commercial Division and typically take no longer than 12 to 18 months from filing.  [*Id.* at ¶ 10].  There is no indication that these judges are also handling a significant felony criminal docket.  [#29-1].  Therefore, this court concludes from a practical standpoint, it appears that adjudication of the central dispute of the breach of contract based on the application of the Jamaican timeshare legislation will proceed more efficiently in Jamaica, rather than Colorado.

The issues from a policy standpoint, however, are equally compelling.  There is no dispute that the contracts at issue in this matter were not executed in Colorado, nor do they involve Colorado entities; nor do they involve a property in Colorado.  Unlike the case presented in *Rivendell Forest Prods., Inc. v. Canadian Pac. Ltd.*, 2 F.3d 990 (10th Cir. 1993), Dr. Chang resides in New Jersey [#1 at 5; #48-1 at 2], and has no articulated connection to Colorado.  [#48].  The property at issue is located in Montego Bay, Jamaica, and therefore, any deprivation of access to the property would occur in Jamaica.  [#48-1 at 1].  The contracts were executed by Dr. Chang, presumably in New Jersey [*id.*] and "an authorized agent in Grand Cayman, B.W.I." [*id.* at 5].  The dispute is governed by the law of the Cayman Islands.  [#50 at 3-4].  Given the stated reason for termination, it appears also to present an issue of interpretation of the Jamaican Timeshare Vacations Act of 2014.  [#29-3 at ¶ 4].  And while Dr. Chang asserts diversity as the basis of this court's subject matter jurisdiction, if the Vail Defendants are dismissed from this action as recommended by this court, none of the remaining Parties is a citizen of Colorado.

[#48 at ¶¶ 1, 4-5].  Indeed, it is unclear whether this court can exercise personal jurisdiction over Half Moon and Great House under either specific or general jurisdiction.  *See* [#19, #25].

The analysis under the second factor, *i.e.* whether the jury would have any connection to the litigation, fares no better for Plaintiff.  Dr. Chang's entire argument regarding the connection between a Colorado jury and her claims are premised on her claim for intentional interference of contractual relations against the Vail Defendants, which this court has recommended dismissing. In addition, she asserts "there is no basis to assume that '[n]o club members are residents of Colorado," but she fails to identify any basis for believing that (1) club members are residents of Colorado; and (2) such club members were somehow involved in the termination of her contracts.  It is also difficult to imagine that a Colorado jury would be particularly invested in considering facts underlying whether a termination of a contract with no connection to Colorado, based on the application of Jamaican timeshare legislation, which is the stated reason for termination in this case, were proper.

It is, however, the third and fourth factors, *i.e.*, the local interest in having localized controversies decided at home; and the appropriateness of having diversity cases tried in a forum that is familiar with the governing law, that give the court the most pause about proceeding in this forum.  As an initial matter, this case necessarily requires the court to apply Cayman Islands law to the breach of contract, declaratory judgment, and injunction claims.  [#50 at 3-4].  While this court is confident that the court could interpret and apply Cayman Islands law if necessary, it also appears from the evidence presented that a court in Jamaica is in a better position to do so given the historical legal interrelationship between Jamaica and the Cayman Island. The Cayman Islands was a dependency of Jamaica for administrative purposes from 1863 to 1962, when Jamaica gained its independence while the Cayman Islands remained subject to the United

Kingdom.  [#19-5].  In addition, the court will likely be called upon to interpret the impact of the

Jamaican Time Share Vacations Act 2014—the identified basis for the termination of the

contracts.   [#29-3 at ¶ 4].   There can be no question from the perspectives of substance,

efficiency, consistency, and judicial humility, that a court in Jamaica is in a better position to

interpret its country's own laws rather than relying upon any American court to do so.

In addition, Plaintiff seeks an injunction from this court ordering foreign Defendants to

abstain from any destruction or impairment of the physical property located in Jamaica.  [#48 at

¶¶ 35-41].   While in some circumstances a federal district court has the power to enjoin

defendants from committing certain acts in foreign countries assuming that it has personal

jurisdiction over the defendants, such authority should be exercised with restraint.  *See* Charles

A. Wright, et al., 11A Fed. Prac. & Proc. Civ. § 2945 (3d ed. 2015).  No such issue would apply

to a Jamaican court, exercising injunctive power over Half Moon and Great House, arising from

the use of property within its territory.

As of this Recommendation, there is no tangible local interest in this case for the District

of Colorado.  This court recognizes that the March 14 termination letter identified Mr. Frank, an

employee of Vail located in Colorado as the point of contact.  [#48 at ¶ 23].  But there is no

allegation in the Amended Complaint that Dr. Chang ever spoke directly to Mr. Frank about the

issue, or that Mr. Frank communicated with Dr. Chang.  [#48].  Instead, the documents appended

to the Amended Complaint reflect correspondence directly between Dr. Chang and individuals

located in Jamaica.  [#48-3, #48-5].  The court also recognizes that the United States federal

courts have an interest in providing a forum for litigation to its citizens and residents arising from

contracts entered in the United States.   However, based on the record before it and its

consideration of a "range of considerations, most notably the convenience of the parties and the

practical difficulties that can attend to the adjudication of a dispute in a certain locality," *Sinochem*, 549 U.S. at 429, this court concludes that the private and public interests presented in this case weigh in favor of having this action proceed in Jamaica, and outweigh Plaintiff's choice of this forum.

Accordingly, this court respectfully RECOMMENDS that the Defendants Half Moon Bay Limited and Great House Limited's Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* be GRANTED.

## CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)     Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Vail Resorts, Inc. and RockResorts International L.L.C. [#51] be **GRANTED**;

(2)     Defendants Half Moon Bay Limited and Great House Limited's Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* [#29] be **GRANTED**;

(3)     The Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Vail Resorts, Inc. and RockResorts International, LLC [#16] be **DENIED as MOOT** in light of the filing of the Amended Complaint;

(4)     Defendant Half Moon Bay Limited's Motion to Dismiss [#19] be **DENIED as MOOT**; and

(5)     Defendant Great House Limited's Motion to Dismiss [#25] be **DENIED as MOOT**.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the

DATED: February 12, 2016                    BY THE COURT:


                                            s/ Nina Y. Wang
                                            United States Magistrate Judge

---

objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).